UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MICHAEL LE and DUNG LE,** § | | |
| *Plaintiffs,* § | | |
| § | | **CASE NO: 4:22-cv-00147** |
| **v.** § | | |
| § | | |
| **UNITED STATES OF AMERICA** § | | |
| *Defendant.* § | | |

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Michael Le and Dung Le submit the following Proposed Findings of Fact and Conclusions of Law.

## I. BACKGROUND

This is a personal injury case filed under the Federal Tort Claims Act. Plaintiff Michael Le was struck by the driver of a postal delivery truck who was backing up on the opposite side of the road against the flow of traffic and in violation of United States Postal Service policy. As a result of the collision, Plaintiff Mr. Le suffered injuries which rendered him a quadriplegic. This trial before the Court is specially set on the Court's docket for April 24, 2023.

## II. PROPOSED FINDINGS OF FACT

1. On May 4, 2018, Michael Le was a 47-year-old man with a pre-existing condition of ankylosing spondylitis. He was employed and regularly engaged in the usual activities of daily living such as cleaning, lawn maintenance, driving and grocery shopping.

2. Michael Le left his home located at 2752 Excalibur Drive in Grand Prairie, Tarrant County, Texas. to pick his son up from school on May 4, 2018.

3. Mr. Le backed his car to the edge of the driveway and the street, stopped and looked both ways and saw no one coming from either direction, then proceeded to back out into the street.

4. At this point, a United States Postal Service delivery truck driven by Ms. Jillian Williams was on the opposite side of the street facing away from Mr. Le's driveway at the community mailbox located several houses away.

5. Mr. Le backed out of his driveway into the street; he came to a complete stop and shifted his vehicle into "Drive" in order to proceed forward.

6. Rather than proceeding forward from the community mailbox with the flow of traffic, Ms. Williams instead backed her vehicle approximately twenty-four (24) feet in the opposite direction against the flow of traffic in her lane and struck Mr. Le's vehicle on the right rear panel on the passenger side of the vehicle. Ms. Williams was an employee of the United States Postal Service and was engaged in her duties of delivering mail on May 4, 2018 at the time that she backed up and struck Mr. Le's vehicle.

7. At the time of the impact caused by the postal vehicle backing into his car, Mr. Le's foot was on the accelerator pedal.

8. The impact caused Mr. Le to suffer a chalk stick fracture to his C6 vertebrae.

9. The C6 fracture, combined with Mr. Le's pre-existing ankylosing spondylitis, resulted in the immediate onset of transient neurological symptoms, which first presented as Mr. Le not being able to remove his foot from the accelerator.

10. His inability to move his foot caused Mr. Le to accelerate forward through his yard, through his neighbor's fence, and into the corner of neighbor's house.

11. The instability of the C6 fracture continued to cause the intermittent loss of use of Mr. Le's lower extremities and then ultimately resulted in his quadriplegia.

12. As a result of Ms. Williams' negligence in backing down the street and hitting Mr. Le, Mr. Le suffered serious permanent injuries and is a quadriplegic.

13. It is United States Postal Service policy for its letter carriers to avoid backing up the postal trucks unless absolutely necessary.

14. Prior to May 4, 2018, Jillian Williams had been trained to safely operate the United States Postal Service vehicle involved in the collision with Mr. Michael Le's vehicle.

15. Jillian Williams' safety training in United States Postal Service vehicle operation included prohibitions against backing unless necessary.

16. It is United States Postal Service policy to promptly meet with the involved employee to conduct an Accident Review Board under circumstances where that employee is involved in an accident.

17. The purpose of an Accident Review Board is to meet with the involved employee and make a determination about the factors contributing to the accident.

18. The Accident Review Board that investigated the facts and circumstances related to the collision on May 4, 2018 determined that the cause of the accident was "unsafe backing" and that the letter carrier "should have dismounted and walked to deliver the package".

19. The Accident Review Board investigated the facts and circumstances related to the collision on May 4, 2018, and determined that the accident was preventable.

20. The Accident Review Board that investigated the facts and circumstances related to the collision on May 4, 2018 determined that had she followed the United States Postal Service policy to only back vehicles when absolutely necessary, the letter carrier could have prevented the accident.

21.     The letter carrier involved in the May 4, 2018 collision was disciplined by the United States Postal Service because she operated her vehicle in an unsafe manner.

22.     Even with mirrors, it is difficult to see behind the rear of the United States Postal Service vehicle, involved in the May 4, 2018 collision.

23.     The Postal Employee's Guide to Safety, USA Rule 448 specifies that backing up in United States Postal Service delivery vehicle should be avoided whenever possible.

24.     Jillian Williams' safety training in United States Postal Service vehicle operation included prohibitions against backing unless necessary.

25.     Jillian Williams backed up her vehicle from the community mailbox against the flow of traffic when she could have avoided doing so.

26.     Ms. Williams received a 7-day suspension for failing to operate her vehicle in a safe manner and was advised by her supervisor in writing that "under no circumstances" should she have backed her vehicle back to the delivery point.

27.     Prior to the May 4, 2018 collision Jillian Williams was aware that United States Postal Service rules forbid backing postal service vehicles under any circumstances unless there is no other way to turn around.

28.     Jillian Williams' decision to back the United States Postal Service vehicle on May 4, 2018 was not made under circumstances that warranted making an exception to the rule against backing.

### III. PROPOSED CONCLUSIONS OF LAW

*Jurisdiction and Venue*

29.     The United States District Court for the Northern District of Texas has jurisdiction over this case pursuant to the Federal Tort Claims Act.  28 U.S.C. §§ 1346(b) and 2671–2680. Venue

is proper in the Fort Worth Division of the Northern District of Texas because the United States is the defendant and the collision occurred and the Le Plaintiffs reside within the geographic division encompassed by the Fort Worth Division. See 28 U.S.C. §§ 1391(e), 1402(b).

*Administrative Prerequisites*

30. Michael and Dung Le satisfied the administrative prerequisites to seek recovery for damages incurred as a result of the alleged negligence of the United States through Jillian Williams See 28 U.S.C. §§ 2401(b), 2675 and sought damages in the amount of $35,003,000.00. The United States denied the claims and the Le Plaintiffs timely filed this action. Any damages awarded are limited to and may not exceed the amount demanded by the Plaintiffs in their administrative claim. See 28 U.S.C. § 2675(b).

31. Under the Federal Tort Claims Act, a plaintiff may recover damages against the United States, under circumstances where a private person would be liable in accordance with the law of the state where the act or omission occurred. See 28 U.S.C. § 1346(b); Quijano v. United States, 325 F.3d 564,567 (5th Cir. 2003); Lebron v. United States, 279 F.3d 321,326 n.4 (5th Cir. 2002). The remedy against the United States under the Federal Tort Claims Act is exclusive with regard to claims based upon torts of federal employees acting within the scope of their employment. 28 U.S.C. § 2679.

32. The United States Postal Service is an agency of the United States of America. At all times material to this lawsuit, the United States Postal Service employed, Jillian Williams, the operator of the United States Postal Service struck the vehicle operated by Mr. Michael Le.

*Causes of Action*

33. Plaintiffs allege that Jillian Williams, a United States letter carrier caused injury to Michael Le through the negligent and grossly negligent operation of the United States Postal

delivery truck that she operated on May 4, 2018. The elements of a Texas negligence action are "the existence of a duty, a breach of that duty, and damages proximately caused by the breach." West Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005); see also Ford v. Cimarron Ins. Co., 230 F.3d 828, 830 (5th Cir. 2000). To establish liability in a negligence action, the plaintiffs must prove the existence of a duty and a violation of that duty. Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523,525 (Tex. 1990) Arana v. Figueroa, 559 S.W.3d 623 (Tex Civ. App. – Dallas 2018)

34. A person owes a duty of ordinary and reasonable care to prevent injury to others. Hayes v. United States, 899 F.2d 438, 444 (5th Cir. 1990) (applying Texas caselaw in action filed pursuant to the Federal Tort Claims Act). Ordinary care is that degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances. See, Mount Pleasant I.S.D. v. Lindburg, 766 S.W.2d 208,213 (Tex. 1989).

35. Proximate cause has two components-cause in fact and foreseeability. IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). Cause in fact means that the negligent act was a substantial factor in bringing about the injury, and without the act, the harm would not have occurred. Travis v. City of Mesquite, 830 S.W.2d 94, 98 (Tex. 1992). Although proximate cause may be shown by circumstantial evidence, it must be proved by evidence of probative force. Exxon Corp. v. Quinn, 726 S.W.2d 17, 21 (Tex. 1987); Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.-Houston [1st Dist.] 1995, writ denied). The test for the second component, foreseeability, is whether a person of ordinary intelligence would have anticipated the danger his negligence creates. Doe v. Boys Clubs of Greater Dallas, 907 S.W.2d 472,477 (Tex. 1995); Holcombe v. United States, 388 F. Supp. 3d 777 (W.D. Tex. 2019).

36. This Court finds that the driver of the United States Postal Service vehicle breached her duty to exercise ordinary care to prevent injury to others by backing her vehicle against the flow of traffic where it was neither necessary nor safe to do so. The Court further finds that driver of the United States Postal Service vehicle was fully aware of the danger of backing up under the circumstances, that she had received training emphasizing the importance of not backing the vehicle unless absolutely necessary and that the danger to others was entirely foreseeable. Williams' conduct constitutes an unexcused breach of duty imposed by the Texas Transportation Code. Specifically, Ms. Williams violated Texas Transportation Code § 545.415.

37. Based upon the above findings and conclusions of law, this Court is obligated to determine proportionate responsibility under Texas law. See Tex. Civ. Prac. & Rem. Code Ann.§ 33.003. Under Texas principles of proportionate responsibility, the Court finds from a preponderance of the evidence and concludes that the appropriate verdict is one which allocates fault 100% to the United States. With this finding and conclusion, the United States will therefore be liable for 100% of the damages suffered by the Le Plaintiffs. See Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.02(a)(1).

*Damages*

38. The Court concludes that the collision caused by the postal truck backing into Michael Le resulted in Michael Le's injuries and that the damages flowing from that collision are compensable pursuant to the Federal Tort Claims Act. Dr. Hugh McPherson, a board-certified orthopedic expert testified that Mr. Le had a pre-existing condition known as ankylosing spondylitis. Ankylosing spondylitis, an autoimmune disease, results in the vertebrae fusing and becoming brittle with diminished bone density and elasticity. This pre-existing condition made Mr. Le's neck more susceptible to injury.

39. Dr. McPherson testified that Mr. Le's initial diagnostic imaging demonstrates that he suffered a chalk stick fracture with an asymmetric distraction with greater distraction on the left side than the right. Dr. McPherson testified that this factor strongly supports a side impact and direction of force to this patient with a high degree of medical probability. Dr. McPherson further testified that the only time at which a side impact or lateral directed force was shown to have occurred was during Mr. Le's collision with the United States postal truck. Dr. McPherson concluded that the initial impact with the postal truck was the key causative factor in relation to Mr. Le's fracture and the subsequent severe sequelae of his injury, Mr. Le's quadriplegia.

40. Under Texas law, "a plaintiff may recover medical damages proximately caused by a tortious event that aggravated a pre-existing medical condition." Wal-Mart Stores Texas, LLC v. Autrey, 2021 WL 1216890, at *10 (Tex.App-Texarkana Apr. 1, 2021, no pet.) (citing Wal-Mart Stores Texas, LP v. Crosby, 295 S.W.3d 346, 352-53 (Tex. App.-Dallas 2009, pet. denied)). The Court accepts Dr. McPherson's testimony regarding injury causation and aggravation of a pre-existing condition.

*Past medical expenses*

41. To recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount, and the expenses were paid or incurred by or on behalf of the plaintiff. See Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West 2008). The Court credits the testimony of Lawrence Lievense with regard to past medical expenses. The Court finds that $3,018,793.82 is the amount of reasonable-and-necessary past medical expenses which were related to Michael Le's injuries sustained in the collision.

*Future Medical Expenses*

42. To recover for future medical expenses, the Le Plaintiffs must show there is a reasonable probability that expenses resulting from the injuries he sustained in the May 4, 2018 collision will be necessary in the future. See Pilgrim's Pride Corp. v. Cernat, 205 S.W.3d 110, 121 (Tex. App.-Texarkana 2006, pet. denied). To make this showing, the Plaintiffs must provide evidence of: (1) a reasonable probability that Michael Le will incur future medical expenses, and (2) the reasonably probable amount of the future medical expenses. Rosenboom Mach. & Tool, Inc. v. Machala, 995 S.W.2d 817, 828 (Tex. App.-Houston [1st Dist.] 1999, pet. denied). The fact-finder may decide the amount of future medical expenses based on: (1) the injuries suffered; (2) the medical care rendered before trial; (3) the injured party's progress toward recovery under the treatment received; and (4) the condition of the injured party at trial. Id.

43. Plaintiffs presented the expert testimony of Jason Marchetti, MD, FAAPMR, CLCP, CPLCP. Dr. Marchetti is board certified by the American Board of Physical Medicine & Rehabilitation. Dr. Marchetti is also a Certified Life Care Planner as designated by the International Commission on Health Care Certification. Dr. Marchetti is also a Certified Life Care Planner by the Certified Physician Life Care Planner Certification Board.

44. Dr. Marchetti reviewed Mr. Le's medical treatment in the past. Dr. Marchetti also performed a history and physical examination of Mr. Le in Mr. Le's home. Dr. Marchetti authored a life care plan detailing Mr. Le's future medical, environmental and transportation needs for the injuries he sustained as a result of a motor vehicle collision which occurred on May 4, 2018.

45. In light of the evidence supporting Mr. Le's past and current medical condition and medical care rendered to date, the Court accepts Dr. Marchetti's testimony that Mr. Le will incur

future medical expenses in the amount of $13,660,919.51. The parties have stipulated that the present-day value of this figure is $13,349,965.00.

*Loss of Earning Capacity, Past and Future*

46. As a result of the motor vehicle collision, Mr. Le suffered past and future lost earnings. To support an award of damages for lost earning capacity, the plaintiff must introduce evidence sufficient to allow the fact-finder to reasonably measure earning capacity before injury in monetary terms. Loss of earnings is the loss of actual income because of the inability to perform a certain job that the person held before the injury. Koko Motel, Inc. v. Mayo, 91 S.W.3d 41, 51 (Tex. App. Amarillo 2002, pet. denied). Loss of earning capacity is calculated after reduction for income-tax payments or unpaid tax liability under federal income-tax law. See Tex. Civ. Prac. & Rem Code Ann. § 18.091(a). Mr. Le was employed at the time of his injury by Sky Chef, Inc. and his annual wage for 2018 was $32,406.00, reduced to present value.

47. Based upon the evidence presented, the Court finds that Plaintiff Michael Le was injured and became a quadriplegic which resulted in damages of past and future lost earnings. The parties have stipulated the amount of Mr. Le's future and past lost earnings and lost earning capacity, reduced to present day value, to be $598,178.50.

*Intangible Damages*

48. Unless specifically excluded, damages available under the underlying state law are recoverable pursuant to the Federal Tort Claims Act. Mr. Le has testified, as has his family and multiple medical experts, that the injuries he sustained on May 4, 2018 and the associated medical conditions from which he now suffers are painful, severe and permanent.

*Physical Pain and Suffering, Past and Future*

49. To prove past physical pain, the plaintiff can testify about the pain or introduce other evidence of it. Hospadales v. McCoy, 513 S.W.3d 724, 742 (Tex.App.—Houston [1st Dist.] 2017, no pet.). The law assumes that physical pain results from a serious injury. City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex.1997). To prove future physical pain, the evidence must show there is a reasonable probability the injury will continue to affect the plaintiff in the future. Marvelli v. Alston, 100 S.W.3d 460, 482 (Tex.App.—Fort Worth 2003, pet. denied). Damages for future pain may be extrapolated from the damages awarded for past pain, based on evidence presented about the past pain. Turner v Duggin, 532 S.W.3d 473, 485-86 (Tex.App.—Texarkana 2017, no pet.)

50. Mr. Le's damages for physical pain and suffering in the past, beginning May 4, 2018 and continuing to date, are determined to be $_____. Mr. Le's damages for physical pain and suffering in the future are determined to be $_____.

*Mental Anguish, Past and Future*

51. The Texas Supreme Court allows for recovery of mental anguish in a personal injury suit in which defendant's conduct caused serious bodily injury. Likes, 962 S.W.2d 489, 495 (Tex.1997). A plaintiff may recover mental anguish damages if she was physically injured. Sanchez v Balderrama, 546 S.W.3d 230, 238 (tex.App.—El Paso 2017, no pet.). Mental-anguish damages are also recoverable for the aggravation of preexisting medical conditions. Southwest Tex. Coors, Inc. v Morales, 948 S.W.2d 948, 952-53 (Tex.App.—San Antonio 1997, no pet.).

52. Mr. Le's damages for mental anguish in the past, beginning May 4, 2018 and continuing to date, are determined to be $_____. Mr. Le's damages for mental anguish in the future are determined to be $_____.

*Impairment, Past and Future*

53. In a personal injury case, a plaintiff can recover damages for past and future physical impairment. Blankenship v Mirick, 984 S.W. 2d 771, 777 (Tex.App.—Waco 1999, pet. denied). Physical impairment is defined, somewhat abstractly, as including "loss of enjoyment of life. Golden Eagle Archery, Inc. v Jackson, 116 S.W.3d 757, 772 (Tex.2003). Physical impairment encompasses the inability to participate in sports, hobbies, or other recreational activities. Katy Springs & Mfg. v Favalora, 476 S.W.3d 579, 599 (Tex.App.—Houston [14th Dist.] 2015, pet. denied). To be recoverable as damages, physical impairment must be substantial and extend beyond pain and suffering, mental anguish or lost earning capacity. Golden Eagle Archery, 116 S.W.3d at 772; Katy Springs, 476 S.W.3d at 599.

54. Mr. Le has and will continue to experience physical impairment. Mr. Le's damages for physical impairment in the past, beginning May 4, 2018 and continuing to date, are determined to be $_____. Mr. Le's damages for physical impairment in the future. are determined to be $_____.

*Disfigurement, Past and Future*

55. In a personal injury case, a plaintiff can recover damages for past and future disfigurement. Wal-Mart Stores v Tinsley, 998 S.W.2d 664, 673 )Tex.App.—Texarkana 1999, pet. denied). Disfigurement is recognized as a separate element of recovery from pain and suffering, mental anguish, in loss of earning capacity. Goldston Corp. v Hernandez, 714 S.W.2d 350, 352-53 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The term disfigurement is defined as that which impairs or injuries the beauty symmetry or appearance of a person or thing or that which renders unsightly, misshapen, imperfect, or deformed in some manner. Goldman v Torres, 341 S.W.2d 154,

160 (Tex.1960). Disfigurement also includes contorted limbs and other deformities. <u>Baptist Mem'l Hosp. Sys. v Smith</u>, 822 S,W.67, 80 (Tex.App.--San Antonio 1981, writ denied).

56.    Mr. Le has and will continue to experience disfigurement.  Mr. Le's damages for disfigurement in the past, beginning May 4, 2018 and continuing to date, are determined to be $_____. Mr. Le's damages for disfigurement in the future. are determined to be $_____.

*Loss of Consortium, Past and Future*

57.    A spouse can recover for loss of consortium when the other spouse's injury was caused by the negligence or intentional tort of a third party. <u>Whittlesey v. Miller</u> , 572 S.W.2d 665, 668 (Tex. 1978). Spousal loss of consortium concerns the emotional and intangible elements of the marriage, including affection, solace, comfort, companionship, society, assistance, and sexual relations. <u>Whittlesey</u>, 572 S.W.2d at 668. The fact finder is entitled to apply its own knowledge and experience to estimate the value of the loss of consortium. <u>Badall v Durgapersad</u>, 454 S.W.3d 626, 638 (Tex.App.—Houston [1st Dist.] 2014, pet. denied).

58.    The Court determines that Dung Le's damages for loss of consortium in the past is $_____. The Court determines that  Dung Le's damages for loss of consortium in the future is $_____.

*Loss of Services, Past and Future*

59.    A spouse can recover for loss of services of the injured spouse. <u>Whittlesey</u>, 572 S.W.2d at 666 (Tex. 1978). "Services" generally means the performance by a spouse of household and domestic duties.  <u>Whittlesey</u>, 572 S.W.2d at 666 (Tex. 1978). If there is no evidence of the value of household services that the injured spouse can no longer perform the jury can infer the value of

the loss from their own knowledge and experience. <u>Critical Path Res. v Cuevas</u>, 561 S.W.3d 523, 566 (Tex.App.—Houston [14th Dist.] 2018, pet. filed 3-6-19).

60.     The Court determines that Dung Le's damages for loss of services in the past is $_____. The Court determines that Dung Le's damages for loss of services in the future is $_____.

 

Respectfully submitted,

*/s/ C. Kyle Pugh*
C. Kyle Pugh
State Bar No. 00789790
kyle@kylepugh.com
Kellie McKee
State Bar No. 24075612
kellie@kylepugh.com
C. Kyle Pugh P.C.
4015 Main Street, Suite 100
Dallas, Texas 75226
Tel: 214-522-4500
Fax: 214-528-7755

John E. Schulman
State Bar No. 17833500
Margaret K. Schulman, Esq.
State Bar No. 17833900
Schulman Law Firm, P.C.
6440 N. Central Expressway, Ste. 605
Dallas, Texas 75206
Tel: (214)361-2580
Fax: (214)361-6580
jschulman@schulmanlaw.com
mschulman@schlmanlaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On March 29, 2023 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the ECF system of the court. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

*/s/ C. Kyle Pugh*
C. Kyle Pugh