# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **MICHAEL LE and DUNG LE,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-cv-00147-O** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the United States of America's Motion for a New Trial, for Remittitur, or to Alter or Amend the Judgment and Brief in Support of the Motion (ECF Nos. 146, 147); Michael Le and Dung Le's Response in Opposition to the Motion, Brief in Support of the Response, and Appendix in Support of the Response (ECF Nos. 148, 149, 150); and the United States of America's Reply in Support of the Motion (ECF No. 151). For the reasons set forth herein, the Court **DENIES** the Motion.

## I.   BACKGROUND[1]

Underlying the Motion before the Court is a personal injury lawsuit arising out of a May 2018 accident between a United States Postal Service ("USPS") truck and a motor vehicle operated by Michael Le, who is now a quadriplegic. Mr. Le and his wife, Dung Le, subsequently sued the United States of America (the "Government") for negligence pursuant to the Federal

---

[1] Unless otherwise noted, all facts and evidence referenced in this Opinion derive from the Court's July 24, 2023 Memorandum Opinion & Order resolving the present case as well as all accompanying sources referenced therein. *See* Mem. Op. & Order, ECF No. 141.

In resolving the instant Rule 59 Motion, the Court retains its latitude to weigh, assess, and construe all of the facts and evidence recounted from the trial proceedings in accordance with the ordinary discretion of district courts to make findings of fact. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982); *Bazile v. Bisso Marine Co.*, 606 F.2d 101, 105 (5th Cir. 1979); *see, e.g., Vazzana v. City of Greenville*, No. 4:03CV289-P-D, 2007 WL 465631, at *2 (N.D. Miss. Feb. 8, 2007). The Court does not view all such facts and evidence in the light most favorable to the verdict winner. *Ibid.*

Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 2671-2680, seeking to recover damages they have suffered and continue to suffer as a result of this tragic incident. In response, the Government claimed that Mr. Le and his spinal surgeon, Dr. Matthew Berchuck, were the negligent actors in this case. During the week of April 24, 2023, the Court presided over a four-day bench trial to adjudicate the claims and defenses raised by the parties in this matter. The proceedings included the testimony of Mr. Le himself, who had been transported to the Courthouse via ambulance. The parties contested most of the underlying facts and import of the evidence presented in this case, but the dispute ultimately turned upon two core inquires: (1) who was at fault for causing Mr. Le's quadriplegia; and (2) if the Government was at fault, how much are Mr. and Mrs. Le to be compensated for the harm they have endured?

At the close of trial, the Court made findings of fact and conclusions of law based upon the evidence presented during the proceedings, which included the Court's assessment of the witnesses and their relative credibility, the parties' arguments and post-trial supplemental briefing, and the applicable authorities. After exhaustive consideration of the entire record, the Court ultimately ruled against the Government and in favor of Mr. and Mrs. Le on their claim of negligence under the FTCA.[2] The Court concluded that the Government is jointly and severally liable for all of the recoverable damages suffered by Mr. and Mrs. Le.[3] With respect to the recoverable damages, the Court determined that Mr. Le is entitled to $23,908,479.73 in past and future medical expenses, loss of earning capacity, physical pain and suffering, mental anguish, physical impairment, and disfigurement, while Mrs. Le is entitled to $2,605,000.00 in past and future loss of consortium and loss of services.[4] The Court assessed and awarded damages

---

[2] Mem. Op. & Order 39, ECF No. 141.
[3] *Id.*
[4] *Id.*; Final J., ECF No. 142.

pursuant to the FTCA by applying Texas law to its findings of fact and conclusions of law on the various harms sustained by Mr. and Mrs. Le and the liability of the Government.

Mr. Le was an active husband and father prior to the automobile accident, providing not only material support but also familial affection and company to his family. Mr. Le was employed and engaged in the usual activities of daily living such as cleaning, lawn maintenance, driving, and grocery shopping. He also engaged in regular physical exercise, such as throwing the baseball with his son and running a mile on the track several times a week. Mr. Le often participated in common family activities such as eating out at restaurants, going out in the community with his family, vacationing, traveling to his son's baseball tournaments, and visiting family abroad. Overall, he could walk, run, eat, drink, exercise, travel, engage in recreational activities, earn a living, experience physical intimacy, bathe himself, feed himself and use a toilet like any other 47-year-old husband and father in good health.

But the lives of Mr. Le and his family changed dramatically and permanently as a result of the May 2018 tragedy. Mr. Le was rendered a permanent quadriplegic, losing neurological function in his extremities forever. Since the onset of his paralysis, Mr. Le has had to endure various health complications requiring recurring hospital stays and medical care to treat infections and manage agonizing pain. Among the many complications he has suffered include an esophageal tear that eventually exacerbated into permanent fistula (i.e., a chronically draining wound that will not heal) and thus required his permanent use of a feeding tube. Mr. Le has also had to suffer through the amputation of his legs to address severe joint stiffness and immobility, as well as regular hospitalizations to address recurring illnesses, infections, and other complications related to his injuries.

3

As a result, Mr. Le has been confined only to his bed or wheelchair and rarely leaves the house due to the difficulty and expense of transporting him anywhere else. Given his absolute immobility, he requires around-the-clock care from his wife and children and can fulfill none of the physical roles he provided for them prior to the automobile accident. Mr. Le is entirely dependent on his family for even the most basic care and functions because he can no longer do anything for himself. He has to be given food, water, and medicine through his feeding tube. He has to be bathed and have his urine and feces removed and cleaned up. He has to be regularly turned over in bed, where he has been relegated to spending most of his time, in order to mitigate bed sores. He and his wife no longer share the physical and intimate relationship of matrimony they shared prior. Mr. Le himself has suffered and continues to suffer grueling physical, mental, and emotional pain as a result of his monumental change in circumstances and significantly diminished quality of life. For example, Mr. Le suffers through severe depression, periodic suicidality, sleep deprivation, and loss of appetite.

Mrs. Le has had to endure and continues to endure mental and emotional pain as a result of her husband's suffering. She has become the sole income-earner and, along with her family members, a primary caretaker of her husband. Mrs. Le and the rest of the family experience intense financial strain due to the loss of Mr. Le's financial support. Mr. Le's adult son Henry stays home to provide full-time care for his father. Mr. Le's other adult son Kevin accompanied his father at the hospital for the entire summer in order to watch out for him. The Le family cannot afford the necessary facilities to make their home ADA compliant, making their task of caring for Mr. Le exceedingly difficult. Mr. Le will continue to require all of his ongoing around-the-clock supervisory care from those close to him and specialized professional medical care for the rest of his life.

4

Following the entry of Final Judgment in this case,[5] the Government filed the instant Motion to challenge various components of Mr. and Mrs. Le's noneconomic damages under Federal Rule of Civil Procedure 59, requesting that the Court grant either a new trial, remittitur, or alteration or amendment on the Final Judgment award in order to reduce Mr. and Mr. Le's recovery.[6] *See* FED. R. CIV. P. 59(a), (e). Specifically, the Government seeks to retry or minimize Mr. Le's past and future physical pain and suffering, past and future mental anguish, past and future physical impairment, and past and future disfigurement. The Government further seeks to retry or minimize Mrs. Le's past loss of consortium. Following the completion of the parties' briefing, the Government's Motion for a New Trial, for Remittitur, or to Alter or Amend the Judgment is now ripe for the Court's review.[7]

## II.  LEGAL STANDARDS

The decision to grant or deny Rule 59 motions for a new trial or to alter or amend a judgment rests squarely within the sound discretion of the federal district court. *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citations omitted); *Stroman v. Thaler*, No. 3:05-CV-1616-D, 2009 WL 3295128, at *1 (N.D. Tex. Oct. 9, 2009) (Fitzwater, C.J.) (citations omitted).

### A.  Motion for New Trial

Upon a Rule 59(a) motion for new trial in a nonjury case, federal courts are permitted to either "grant a new trial on all or some of the issues . . . for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court," or "open the judgment . . . take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." FED. R. CIV. P. 59(a)(1)(B), (a)(2). But a new nonjury trial

---

[5] Final J., ECF No. 142.

[6] Def.'s Mot., ECF No. 146.

[7] *See generally* Def.'s Br. in Support of Mot., ECF No. 147; Pls.' Resp. in Opposition to Mot., ECF No. 148; Pls.' Br. in Support of Resp., ECF No. 149; Pls.' Appx. in Support of Resp., ECF No. 150; Def.'s Reply in Support of Mot., ECF No. 151.

"should be based upon a manifest error of law or mistake of fact," while a judgment from a nonjury trial "should not be set aside except for substantial reasons." *Isystems v. Spark Networks Ltd.*, 2015 WL 13469855, at *1 (N.D. Tex. Jan. 13, 2015) (Godbey, J.) (cleaned up). To that end, Rule 59(a) does not sanction federal courts to grant a new nonjury trial unless: (1) either a manifest error of law or fact has been clearly established; or (2) newly discovered evidence has been presented. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted). The burden therefore falls on the moving party to demonstrate it is "reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citation omitted).

It necessarily follows that Rule 59(a) should not be misappropriated toward relitigating issues that have been resolved to the moving party's dissatisfaction, *see Salinas v. Wal-Mart Stores Texas, LLC*, No. 3:10-CV-1691-L, 2010 WL 5136106, at *5 (N.D. Tex. Dec. 16, 2010) (Lindsay, J.), raising arguments or presenting evidence which could have been raised or presented prior to entry of judgment, *see Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003), or rearguing the same case under a new legal theory, *see Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986).

### B.  Motion to Alter or Amend Judgment

A Rule 59(e) motion to alter or amend judgment similarly "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (citing FED. R. CIV. P. 59(e)). As with Rule 59(a), the "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). To that end, it has been well-established that Rule 59(e) does not sanction federal courts to alter or amend judgments except for the narrow purposes of: (1)

6

accommodating an intervening change in controlling law; (2) accounting for newly discovered evidence; or (3) correcting a manifest error of law or fact. *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019).

Correspondingly, and in parity with Rule 59(a), Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479. Absent any manifest error of law or fact, newly discovered yet previously unavailable evidence, or intervening change in controlling law, then, Rule 59(e) will not avail of any post-judgment relief. *Jennings v. Towers Watson*, 11 F.4th 335, 345 (5th Cir. 2021); *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012); *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Overall, these governing standards "favor the denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Boudreaux*, 2 F.3d 606, 611 (5th Cir. 1993).

## III. ANALYSIS

In the instant motion, the Government moves the Court under Rule 59 for a new trial, remittitur, or alteration or amendment of the judgment in this case to reduce the amount of noneconomic damages awarded to Mr. and Mrs. Le. *See* FED. R. CIV. P. 59(a), (e). In support, the Government contends that various components of Mr. and Mrs. Le's noneconomic damages award are out of step with lower awards dictated by the Fifth Circuit's maximum recovery rule. *See, e.g.*, *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002).[8] Mr. and Mrs. Le counter that the Court should deny the Government's motion in its entirety. They aver that the maximum recovery rule is rendered inoperative on their award by findings that the contested noneconomic

---

[8] Def.'s Br. in Support of Mot. 1, ECF No. 147.

damages are already lower than those awarded in factually comparable cases.[9] *See, e.g.*, *Douglass v. Delta Air Lines, Inc.*, 897 F.2d 1336, 1344, n.14 (5th Cir. 1990).

The Fifth Circuit has developed a judge-made "maximum recovery rule" for evaluating whether and to what extent a damages award is excessive. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 297 (5th Cir. 2019); *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 364-65 (5th Cir. 2019). The rule extends to awards issued by the bench in place of a jury, as is the case here. *See Lebron*, 279 F.3d at 326. In the context of a Rule 59 motion implicating the maximum recovery rule, a court "may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreeing to a remittitur of the excessive portion of the award." *Hernandez v. M/V Rajaan*, 841 F.2d 582, 587 (5th Cir. 1988) (citations omitted); *see, e.g.*, *Chacon v. Copeland*, 103 F. Supp. 3d 827, 835 (W.D. Tex. 2015). However, where a damages award is found to exceed the bounds of reasonable recovery set by the rule, the typical remedy is a grant of remittitur rather than new trial. *See Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985); *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). The maximum recovery rule prescribes the scope of the remittitur, that is, the reduction of the verdict "to the maximum amount the jury [or bench] could properly have awarded." *Ibid*.

Upon review of the parties' briefing, evidence, and applicable law, the Court finds that none of the noneconomic damages challenged in the instant Motion are unreasonably excessive so as to require reduction under the maximum recovery rule.

### A.  Maximum Recovery Rule

In the Fifth Circuit, courts apply a "loosely defined 'maximum recovery rule'" when evaluating whether and to what extent a damages award "is beyond the maximum possible award

---

[9] Pls.' Br. in Support of Resp. 1–2, ECF No. 149

supported by the evidence." *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir. 1981) (citations omitted); *Lebron*, 279 F.3d at 326 (cleaned up). Courts are required to make a downward adjustment to a damages award in accordance with the maximum recovery under the rule. *See Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003) (citation omitted). Conversely, the rule dictates that courts must "'decline to reduce damages where the amount awarded is not disproportionate to at least *one factually similar* case from the relevant jurisdiction.'" *Lebron*, 279 F.3d at 326 (quoting *Douglass*, 897 F.2d at 1344 (emphasis in original)). More specifically, "the rule 'does not become operative *unless* the award exceeds 133% of the highest previous recovery in the [relevant jurisdiction]' for a factually similar case." *Id.* (quoting *Douglass*, 897 F.2d at 1344 n.14) (emphasis added). But in order to account for the multitude of factual nuances at play across many different cases, the Fifth Circuit has carved out an exception to the rule that merits a court's departure from precedential damages awards in cases presenting "'unique facts . . . that are not reflected within the controlling caselaw.'" *Id.* (quoting *Douglass*, 897 F.2d at 1339).

The relevant jurisdiction for purposes of this inquiry "is the state providing the substantive law for the claim." *Vogler*, 352 F.3d at 156. Specific to the FTCA personal injury case at bar, this is "the law of the state where the tort occurred," which is the State of Texas. *Wakefield v. United States*, 765 F.2d 55, 58 (5th Cir. 1985). In the present inquiry, the relevant jurisdiction consists of Texas state court decisions as well as Fifth Circuit decisions applying Texas law. *See Puga*, 922 F.3d at 297 (citing *Vogler*, 352 F.3d at 156); *see, e.g.*, *Wakefield*, 765 F.2d at 58-61; *Lebron*, 279 F.3d at 326 & n.4, 327-29. The comparability inquiry is cabined further to only those decisions that have been published, *see id.* at 326-327; *Longoria*, 932 F.3d

at 365, while the damages awards from these prior published decisions must also be adjusted to account for inflation, *see, e.g.*, *id.* at 365, 367 n.6; *Puga*, 922 F.3d at 298 & n.12.[10]

Overall, the loose nature of the maximum recovery rule is informed by its principal teleology "to bring *rough consistency* into comparable damages awards." *Lebron*, 279 F.3d at 328 (emphasis added). As such, a court's reassessment of a damages award within its broad parameters should not be treated as an exacting scientific analysis. *See Douglass*, 897 F.2d at 1339; *Dixon*, 754 F.2d at 590. Rather, it is an "inherently subjective" inquiry involving the fluid interplay between experience, emotions, and calculation. *Ibid*; *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983).

### B. Mr. Le's Physical Pain and Mental Anguish

Based on the Court's assessment of testimony and evidence offered at trial regarding Mr. Le's physical pain resulting from his injuries, its observation of Mr. Le himself, and its earlier acceptance of Mr. Le's expected life span, the Court determined that Mr. Le is entitled to recover damages in the amount of **$1,500,000.00** for his past physical pain and suffering and **$3,900,000.00** for his continued physical pain and suffering in the future.[11] However, at this post-judgment juncture, the Government now seeks to retry or minimize Mr. Le's physical pain and suffering to a recovery of merely $310,759.69 for the past and $665,000.000 for the future.[12]

So too has the Court determined, based upon its assessment of trial testimony regarding Mr. Le's mental suffering resulting from his injuries—which entails severe depression and periodic suicidality—that Mr. Le is entitled to recover damages in the amount of **$750,000.00** for

---

[10] Following the Fifth Circuit's approach, the Court employs the CPI Inflation Calculator of the Bureau of Labor Statistics to perform the required conversions in this Opinion. *See, e.g.*, *Longoria*, 932 F.3d at 367 n.6 (citing CPI Inflation Calculator, U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS, https://data.bls.gov/cgi-bin/cpicalc.pl); *Puga*, 922 F.3d at 298 n.12 (same).
[11] Mem. Op. & Order 29-30, ECF No. 141.
[12] Def.'s Br. in Support of Mot. 10–12, ECF No. 147.

his past mental anguish and **$500,000.00** for his future mental anguish.[13] Yet the Government also insists that Mr. Le's past and future mental anguish be retried or reduced down to a recovery of $210,610.30 and $155,379.84, respectively.[14]

In response, the plaintiffs submit that the maximum recovery rule does not operate on the physical pain and mental anguish components of Mr. Le's award because they are dwarfed by higher previous recoveries in factually similar cases. The Court finds that the Government has failed to "clearly establish either a manifest error of law or fact" in the application of the maximum recovery rule to any of these challenged award components. *Simon*, 891 F.2d at 1159.

### 1.   Mr. Le's Past Physical Pain and Mental Anguish

The Final Judgment on Mr. Le's past physical pain and mental anguish falls squarely within the parameters of maximum permissible recovery as prescribed by *Holcombe v. United States*, 584 F. Supp. 3d 225 (W.D. Tex. 2022). There, the District Court awarded an analogously injured plaintiff—who was permanently paralyzed from the waist down as a result of disputed incident—$5 million for his physical pain and mental anguish sustained in the past. *See Holcombe*, 584 F. Supp. 3d at 315-17. Before that award is even adjusted under the 133% multiplier, the Court's $1.5 million and $750k judgments on Mr. Le's physical pain and mental anguish sustained in the past combine for less than half of the *Holcomb* plaintiff's higher previous recovery.

*Holcombe* also presents a "factually similar case" to that of Mr. Le's. *Lebron*, 279 F.3d at 326. The plaintiffs share in common a permanent paralysis in their lower extremities, *see Holcombe*, 584 F. Supp. 3d at 315-16, and thus the typical manifestations of physical and mental suffering that accompany it as well. *See Nat'l Cnty. Mut. Fire Ins. Co. v. Howard*, 749 S.W.2d

---

[13] Mem. Op. & Order 30-31, ECF No. 141.
[14] Def.'s Br. in Support of Mot. 14–19, ECF No. 147.

618, 622 (Tex. App.—Fort Worth 1988, writ denied) (providing that "the pain and mental anguish associated with [paralysis in the extremities] are self-evident"). *A fortiori*, the *Holcombe* plaintiff was awarded a higher recovery for his paraplegia than did Mr. Le for his quadriplegia, *see Holcombe*, 584 F. Supp. 3d at 317, despite the more severe bodily paralysis, pain, and anguish associated with the latter. *See, e.g.*, *Hunter v. Texas Farm Bureau Mut. Ins. Co.*, 639 S.W.3d 251, 261 (Tex. App. —Houston [1st Dist.] 2021, no pet.) (recognizing that as a uniquely manifest injury, "quadriplegia speaks for itself" with respect to "compensable pain, anguish, and impairment").

Consequently, the Court concludes that the maximum recovery rule "does not become operative" on Mr. Le's past physical pain and mental anguish, as both do not "exceed 133% of the highest previous recovery . . . for a factually similar case." *Lebron*, 279 F.3d at 326 (cleaned up).

2.   Mr. Le's Future Physical Pain and Mental Anguish

Having considered the various cases proffered by the parties, the Court finds that the Texas Court of Appeals decision in *Nat'l Cnty. Mut. Fire* controls the reasonable recovery inquiry for Mr. Le's future physical pain and mental anguish. 749 S.W.2d 618. This finding is based on the principal factor weighing into the identification of a factually similar case, namely, that the comparison plaintiff sustained a similar injury to the plaintiff at bar. *See Salinas v. O'Neill*, 286 F.3d 827, 830-31 (5th Cir. 2002) (expounding that a "mainstay" factor in the excessiveness evaluation is "cases with similar injuries"). It is also based on Texas courts recognizing quadriplegia as a unique category of injury "so manifest or severe" as to "speak[] for itself" in the assessment of compensable physical pain and mental anguish. *Hunter*, 639 S.W.3d at 261. Mirroring the main injury that was sustained by Mr. Le, and thus primarily relevant to the

evaluation of his physical pain and mental anguish, the *Howard* plaintiff suffered from quadriplegia as a result of an automobile collision. *See Howard*, 749 S.W.2d at 621. Thus, unlike the other cases dressed up as factually similar in the parties' briefing, *Howard* is a "factually similar case" to the one before the Court with respect to future physical pain and mental anguish. *Lebron*, 279 F.3d at 326.

Turning to the award comparison, the state appeals panel in *Howard* affirmed—and held as not excessive—a recovery of $1.3 million for the future physical pain and mental anguish of the quadriplegic plaintiff. *See Howard*, 749 S.W.2d at 622-24. Adjusted for inflation and by the 133% multiplier, that award converts to a maximum recovery of $3,714,736.56 for future physical pain and mental anguish in May 2018—the date of the relevant automobile accident in this case.[15] *See, e.g.*, *Longoria*, 932 F.3d at 367 n.6. In comparison, the $3.9 million judgment on Mr. Le's future physical pain and $500k judgment on Mr. Le's future mental anguish are in excess of the *Howard* plaintiff's highest previous recovery by a $685,263.44 margin. However, this excess is not dispositive of the matter, for the "loosely defined" maximum recovery rule is applied according to its broader purpose of "bring[ing] rough consistency into comparable damages awards." *Lebron*, 279 F.3d at 326, 328 (internal quotation marks omitted). To that end, the rule permits the Court to depart from the ceiling set by *Howard* in the present case on

---

[15] The plaintiffs insist that the Court adopt its conversion of the future physical pain and mental anguish award in *Howard* to $4,513,575.91. But this is based on the use of July 2023 as the end date in the inflation adjustment calculation, which is the date of the instant damages award. As the Government correctly points out in its briefing, the correct end date for inflation adjustment according to the method employed by the Fifth Circuit is the date of the incident at issue in the current case. *See, e.g.*, *Longoria*, 932 F.3d at 367 n.6 ("For the calculation, we used the date April 2016, when [plaintiff's] accident occurred.").

As such, the Court declines to adopt the maximum recovery calculation proffered by the plaintiffs in favor of one that adjusts for inflation according to the proper end date of May 2018. Applying the 133% multiplier thereto, this maximum recovery calculation results in an award of $3,714,736.56 for future physical pain and mental anguish.

account of "'unique facts [that] are present that are not reflected within [the *Howard* case].'" *Lebron*, 279 F.3d at 326 (quoting *Douglass*, 897 F.2d at 1339).

In *Howard*, the injured plaintiff's award for future physical pain and mental anguish was *solely* derivative of his quadriplegia. *See Howard*, 749 S.W.2d at 622. In due part to the special status of quadriplegia under Texas law for these damages, the *Howard* plaintiff's award was affirmed based upon the presumptive pain and anguish he will sustain from paralysis in all four extremities alone, and no other major severe underlying condition. *See id.* ("The *pain and mental anguish* associated with this condition are *self-evident*, but they are nevertheless detailed in the testimony of Mr. Riley . . . about his pain and his limitations." (emphasis added)).

Contrasted with the Court's evaluation of Mr. Le's future pain and mental anguish, the award is *not only* derivative of his permanent quadriplegia, but *also* his permanent esophageal fistula, amputated legs, depression and suicidality, and other physical and mental complications that continue to proliferate therefrom. The Court found these drastic distinctions between Mr. Le's multiple severe underlying injuries and the presumptive pain and anguish of the quadriplegic plaintiff in *Howard* to be of material significance with respect to Mr. Le's outlook for continued physical and mental suffering. The Court therefore concluded—and reaffirms here—that the consequential damages that have yet to be inflicted upon Mr. Le's physical and mental condition will be amplified to a far greater magnitude by the uniquely severe nature of enduring permanent esophageal fistula, amputated legs, depression and suicidality, and other downstream physical and mental tolls *on top of* permanent quadriplegia. On this basis, the Court deems Mr. Le's recovery to be "reasonable" and a "merited" departure from *Howard* under the maximum recovery rule. *Lebron*, 279 F.3d at 325-26.

14

In sum, the Court concludes that the multitude of severe conditions undergirding Mr. Le's claim present exacerbating factual peculiarities which weigh heavily on his forecasted pain and anguish but are "not reflected within the controlling caselaw." *Douglass*, 897 F.2d at 1339. Under the maximum recover rule, then, the Court will "decline to reduce" the physical pain and mental anguish Mr. Le will continue to sustain in the future because "the amount awarded is not disproportionate" to a sufficiently factually similar case. *Douglass*, 897 F.2d at 1344.

Having therefore failed to meet its burden of "clearly establish[ing] either a manifest error of law or fact" in the foregoing judgment awards, the Court **DENIES** the Government's Motion insofar as it requests a new trial, remittitur, or alteration or amendment of the Final Judgment on Mr. Le's entitlement to recover **$1,500,000.00** for his past physical pain and suffering, **$3,900,000.00** for his future physical pain and suffering, **$750,000.00** for his past mental anguish, and **$500,000.00** for his future mental anguish. *Simon*, 891 F.2d at 1159.

### C. Mr. Le's Physical Impairment

Based on the Court's assessment of trial testimony regarding Mr. Le's incapacity for recreational and daily lifestyle activities as a result of his injuries—including his participation in sports, personal hobbies, and basic living chores—along with its earlier acceptance of Mr. Le's expected life span, the Court determined that Mr. Le is entitled to recover damages in the amount of **$2,000,000.00** for his past physical impairment and **$5,200,000.00** for his future physical impairment.[16] The Government seeks to retry or minimize Mr. Le's physical impairment down to a $162,945.60 recovery for the past and a $2,660,000.00 recovery for the future.[17] Mr. and Mrs. Le retort that the maximum recovery rule is inoperable on either of these Final Judgment award components because neither exceed the 133% multiplier when measured against prior inflation-

---

[16] Mem. Op. & Order 31, ECF No. 141.
[17] Def.'s Br. in Support of Mot. 18–21, ECF No. 147.

adjusted recoveries in factually similar cases. The Court agrees with the plaintiffs and finds that the controlling case law renders the maximum recovery rule inoperative on Mr. Le's past and future physical impairment.

### 1. Mr. Le's Past Physical Impairment

Under the maximum recovery rule, the Final Judgment on Mr. Le's past physical impairment falls squarely within the parameters of permissible recovery prescribed by *Holcombe*, 584 F. Supp. 3d 225. The District Court in *Holcombe* awarded an analogously injured plaintiff, who was permanently paralyzed from the waist down as a result of the incident in dispute, $3 million for past physical impairment. *See id.* at 315-17. Before that award is even adjusted under the 133% multiplier, the Court's $2 million judgment on the physical impairment Mr. Le has sustained in the past is already well short of the *Holcomb* plaintiff's higher previous recovery.

Moreover, in this particular damages award context, *Holcombe* constitutes a "factually similar case" to the one presently before the Court. *Lebron*, 279 F.3d at 326. Paralleling the various impairments sustained by Mr. Le on account of his quadriplegia, the *Holcomb* plaintiff's paraplegia rendered him incapacitated to continue his analogously active lifestyle of recreational sports, personal and family hobbies, travel, and many of the usual physical tasks associated with day-to-day living. *See Holcombe*, 584 F. Supp. 3d at 316.

The Court therefore concludes that the maximum recovery rule "does not become operative" on Mr. Le's past physical impairment because it does not "exceed 133% of the highest previous recovery . . . for a factually similar case." *Lebron*, 279 F.3d at 326 (cleaned up).

2.  Mr. Le's Future Physical Impairment

So too does the Final Judgment on Mr. Le's future physical impairment pass muster under the maximum recovery rule. For this component of the award, the Texas Court of Appeals decision in *GMC v. Burry* governs the boundaries of reasonable recovery. 203 S.W.3d 514 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g). There, the state appeals panel affirmed—and held as not excessive—a $3.5 million recovery for the future physical impairment of a plaintiff with permanent severe brain damage resulting from an automobile collision. *See Burry*, 203 S.W.3d at 554-55. Adjusted for inflation and by the 133% multiplier, that award converts to a maximum recovery of $5,772,016.46 in May 2018—the date of the relevant automobile accident in this case. *See, e.g.*, *Longoria*, 932 F.3d at 367 n.6. Measured against this benchmark, the Court's $5.2 million judgment on Mr. Le's future physical impairment is safely below the *Burry* plaintiff's higher previous recovery.

Furthermore, *Burry* amounts to a "factually similar case" to Mr. Le's as it relates to the future physical impairment component at issue here. *Lebron*, 279 F.3d at 326. For the rest of Mr. Le's life, he will suffer from a total incapacity to participate in preferred hobbies and family activities, travel outside the home, or perform personal maintenance and the plethora of other basic activities required for everyday living without constant supervisory care and assistance. These perpetual and permanent physical impairments are due to Mr. Le's permanent loss of essential neurological functions associated with paraplegia. Congruent with Mr. Le's future physical impairment, the *Burry* plaintiff's permanent severe brain damage had rendered her permanently incapacitated to participate in family hobbies such as reading to her children, operate a motor vehicle on her own for travel outside of the home, or perform the basic activities required for everyday living without perpetual supervision. *See Burry*, 203 S.W.3d at 555. On

17

top of that, and just like the future outlook that Mr. Le faces here, the *Burry* plaintiff had already "reached maximum improvement and would continue to have these problems and more *throughout the rest of her life*." *Id.* (emphasis added).

Thus, as with Mr. Le's past physical impairment, the Court concludes that the maximum recovery rule "does not become operative" on his *future* physical impairment, either, for it likewise does not "exceed 133% of the highest previous recovery . . . for a factually similar case." *Lebron*, 279 F.3d at 326 (cleaned up).

Having again failed to "clearly establish either a manifest error of law or fact" here, the Court also **DENIES** the Government's Motion insofar as it requests a new trial, remittitur, or alteration or amendment of the Final Judgment on Mr. Le's entitlement to recover **$2,000,000.00** for his past physical impairment and **$5,200,000.00** for his continued physical impairment in the future. *Simon*, 891 F.2d at 1159.

### D.  Mr. Le's Disfigurement

Based on the Court's assessment of evidence offered at trial regarding Mr. Le's bodily deformities and contortions resulting from his injuries, including his amputated legs, and its earlier acceptance of Mr. Le's expected life span, the Court determined that Mr. Le is entitled to recover damages in the amount of **$500,000.00** for his past disfigurement and **$1,300,000.00** for his continued disfigurement in the future.[18] The Government seeks to retry or minimize Mr. Le's disfigurement down to a $162,945.60 recovery for the past and a $407,363.98 recovery for the future.[19] In response, Mr. and Mrs. Le again posit that the maximum recovery rule is inoperable on either of these award components for similar reasons as those advanced in favor of past and

---

[18] Mem. Op. & Order 32, ECF No. 141.
[19] Def.'s Br. in Support of Mot. 22, ECF No. 147.

future physical impairment. The Court finds Mr. Le's recovery for past and future disfigurement to be reasonable under the rule.

Under the maximum recovery rule, the Texas Court of Appeals decision in *Baptist Memorial Hospital System v. Smith* provides the reasonable recovery contours for Mr. Le's past and future disfigurement. 822 S.W.2d 67 (Tex. App.—San Antonio 1991, writ denied), *abrogated in part on other grounds*, *Sampson v. Baptist Mem'l Hosp. Sys.*, 940 S.W.2d 128 (Tex. App.—San Antonio 1996, writ granted). There, the state appeals panel affirmed—and held as not excessive—a recovery of $500k for the past disfigurement and $1 million for the future disfigurement of a plaintiff who suffered from contorted limbs as a result of his permanent severe brain damage. *See Smith*, 822 S.W.2d at 80-81, 83. Adjusted for inflation and by the 133% multiplier, that award converts to a maximum recovery of $1,224,787.85 for past disfigurement and $2,449,575.70 for future disfigurement in May 2018—the date of the relevant automobile accident in this case. *See, e.g.*, *Longoria*, 932 F.3d at 367 n.6. Juxtaposed against this ceiling, neither the Court's $500k judgment on Mr. Le's past disfigurement, nor its $1.3 million judgment on Mr. Le's future disfigurement, comes close to transgressing the *Smith* plaintiff's higher previous recovery.

In the disfigurement context, *Smith* is a "factually similar case" to that of Mr. Le's as well. *Lebron*, 279 F.3d at 326. Mr. Le has suffered and will continue to suffer from amputated lower legs as well as immobility and stiffness in his limbs due to permanent loss of neurological function. In a similar vein, it was determined that the *Smith* plaintiff had suffered and would continue to suffer from flexion contractures of his limbs, wherein his left arm and both of his legs are immobilized or drawn, due to permanent severe brain damage. *See Smith*, 822 S.W.2d at

19

80. In both cases, it was found that the injured plaintiffs' underlying conditions were permanent and their limb contortions unimproved. *Id.*

As such, the Court concludes that the maximum recovery rule "does not become operative" on Mr. Le's past or future disfigurement because neither "exceed 133% of the highest previous recovery . . . for a factually similar case." *Lebron*, 279 F.3d at 326 (cleaned up).

Having thus failed to "clearly establish either a manifest error of law or fact" on either disfigurement component, the Court additionally **DENIES** the Government's Motion insofar as it requests a new trial, remittitur, or alteration or amendment of the Final Judgment on Mr. Le's entitlement to recover **$500,000.00** for his past disfigurement and **$1,300,000.00** for his continued disfigurement in the future. *Simon*, 891 F.2d at 1159.

### E.  Mrs. Le's Loss of Consortium

Based on the Court's assessment of testimony offered at trial regarding changes in Mr. and Mrs. Le's marital relationship resulting from Mr. Le's injuries, and its observation of facts and circumstances particular to this case, the Court determined that Mrs. Le is entitled to recover damages in the amount of **$500,000.00** for her past loss of consortium and **$2,000,000.00** for her continued loss of consortium in the future.[20] The Government seeks to retry or minimize Mrs. Le's past loss of consortium down to a $409,125.00 recovery.[21] Mr. and Mrs. Le aver that the $500k award for Mrs. Le's past loss of consortium falls outside the operative bounds of the maximum recovery rule. The Court declines to adopt either party's position but nonetheless finds that Mrs. Le's award is permissible under an appropriate application of the rule to the unique circumstances of this case.

---

[20] Mem. Op. & Order 32-33, ECF No. 141.
[21] Def.'s Br. in Support of Mot. 23, ECF No. 147.

Because Mr. Le survived the tragic accident that is the subject of this case, the Fifth Circuit's decision in *Puga* controls the issue of Mrs. Le's past loss of consortium. *See Puga*, 922 F.3d at 298-99 & n.13 (explaining that the "most important reference point for determining factual similarity is whether the primary victim lived or died" and that the "difference between life and death makes the cases meaningfully different"). The *Puga* panel held, and the parties do not dispute, that the maximum recovery rule limited the past loss of consortium recovery of the victim's wife in that case to $409,125.00. *Id.* at 298. However, at the heart of this "loosely defined" maximum recovery rule is its broader goal of merely "bring[ing] rough consistency into comparable damages awards." *Lebron*, 279 F.3d at 326, 328 (internal quotation marks omitted). And to that end, the rule permits the Court to depart from the contours set by *Puga* in the present case on account of "'unique facts [that] are present that are not reflected within [the *Puga* case].'" *Lebron*, 279 F.3d at 326 (quoting *Douglass*, 897 F.2d at 1339).

Loss of consortium under Texas law concerns the emotional and intangible elements of a marriage relationship, including love, affection, protection, comfort, companionship, care, society, and sexual relations. *Whittlesey v. Miller*, 572 S.W.2d 665, 667-68 (Tex. 1978). As the Court noted in its July 24, 2023 Opinion, this award is derivative of the specific injury claim advanced by Mr. Le and entails a subjective assessment requiring the Court to apply its own knowledge and experience to the damages suffered by Mrs. Le in her martial relationship. *See Motor Express, Inc. v. Rodriguez*, 925 S.W.2d 638, 640 (Tex. 1996); *Badall v. Durgapersad*, 454 S.W.3d 626, 638 (Tex. App.— Houston [1st Dist.] 2014, pet. denied).

In *Puga*, the plaintiff-wife's past loss of consortium was derivative of her victim-husband's severe burns and fractures across various portions of his body. *See Puga*, 922 F.3d at 289. Here, Mrs. Le's loss of consortium is derivative of Mr. Le's permanent quadriplegia,

21

esophageal fistula, amputated legs, depression and suicidality, and various severe complications proliferating therefrom. The Court found these drastic distinctions between Mr. Le's injuries and those of the victim-husband in *Puga* to be of material significance with respect to the negative impacts on martial companionship. The Court therefore concluded—and reaffirms here—that the consequential damages inflicted upon various emotional and intangible aspects of Mrs. Le's marital relationship with Mr. Le were amplified to a greater magnitude by the uniquely severe nature of her husband's total incapacitation.

In conclusion, Mr. Le's injury claim presents exacerbating factual peculiarities bearing on Mrs. Le's marital relationship that are "not reflected within the controlling caselaw" on past loss of consortium. *Douglass*, 897 F.2d at 1339. Under the maximum recover rule, then, the Court will "decline to reduce" the loss of consortium Mrs. Le has sustained in the past because "the amount awarded is not disproportionate" to a sufficiently factually similar case. *Douglass*, 897 F.2d at 1344.

By virtue of the Government's failure to "clearly establish either a manifest error of law or fact" on this award component, the Court further **DENIES** the Government's Motion insofar as it requests a new trial, remittitur, or alteration or amendment of the Final Judgment on Mrs. Le's entitlement to recover **$500,000.00** for her past loss of consortium. *Simon*, 891 F.2d at 1159.

\*      \*      \*      \*

In light of the foregoing, the Court holds that the Government fails to surmount its burden of clearly establishing the existence of either an intervening change in controlling law, some newly discovered evidence not previously presented, or a manifest error of law or mistake of fact that requires correction on at least one component of Mr. and Mrs. Le's noneconomic damages

22

that the Government challenges for excessiveness under the maximum recovery rule. Rather, the instant Motion amounts to little more than an attempt at "rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment" in this case. *Templet*, 367 F.3d at 479. Failing to otherwise satisfy one of the narrow and finite purposes assigned to motions for a new trial or to alter or amend a judgment, Rule 59 will not avail the Government of any post-judgment relief. *See Salinas*, 2010 WL 5136106, at *5.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that the Motion for a New Trial, for Remittitur, or to Alter or Amend the Judgment (ECF No. 146) should be and is hereby **DENIED**.

**SO ORDERED** on this **15th day** of **December, 2023**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

23